1   Brian Hennessy, State Bar No. 226721
    BHennessy@perkinscoie.com
2   PERKINS COIE LLP
    3150 Porter Drive
3   Palo Alto, CA  94304-1212
    Telephone: 650.838.4300
4   Facsimile:  650.838.4350

5   James McCullagh, *pro hac vice*
    JMcCullagh@perkinscoie.com
6   Joseph Cutler, *pro hac vice*
    JCutler@perkinscoie.com
7   PERKINS COIE LLP
    1201 Third Avenue, Suite 4800
8   Seattle, WA  98101
    Telephone:  206.359.8000
9   Facsimile:  206.359.9000

10  Attorneys for Plaintiff
       FACEBOOK, INC.
11

12                 UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                     SAN JOSE DIVISION

15

16  FACEBOOK, INC., a Delaware            **Case No. 10-CV-4712-JF**
    corporation,
17                                        **PLAINTIFF FACEBOOK INC.'S**
                         Plaintiff,       **OPPOSITION TO MAXBOUNTY, INC.'S**
18                                        **MOTION TO DISMISS COUNTS I, II**
         v.                               **AND III OF THE COMPLAINT**
19
    MAXBOUNTY, INC., a Canadian
20  corporation,                          Hearing Date:  February 11, 2011
                                                    Time:  9:00 a.m.
21                       Defendant.

22

23

24

25

26

27

28

PLAINTIFF FACEBOOK INC.'S                        Case No. 10-CV-4712-JF
MEMORANDUM IN OPPOSITION TO DEF'S      -1-
MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     ISSUES ..................................................................................................................... 1

III.    ARGUMENT ............................................................................................................. 2

    A.      Legal Standard:  Maxbounty Has the Burden to Show that
        There Is No Set of Facts that Would Entitle Facebook to
        Relief Based on the Allegations in the Complaint ................................................ 2

    B.      Communications Sent and Received on Facebook Are
        "Electronic Mail Messages" Within the Scope of the Act ..................................... 2

    C.      Claims Under the CFAA Are Not Subject to the Heightened
        Pleading Standard of Rule 9(b) ............................................................................. 6

    D.      Facebook's Complaint Pleads Fraud with Particularity ........................................ 7

        1.      Rule 9(b) Requires that a Plaintiff Plead the
                Circumstances Constituting Fraud with Particularity,
                but Allegations of Knowledge and Intent May Be
                Alleged Generally .................................................................................... 7

        2.      Facebook's Complaint Sets Forth the Circumstances
                Constituting Fraud and Maxbounty's Contributions
                to This Fraud in Detail ............................................................................. 8

IV.     CONCLUSION ........................................................................................................ 12

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009) .............................................................. 2, 11

5

*Bangura v. Hansen*, 434 F.3d 487 (6th Cir. 2006).......................................................................... 2

6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *cert. denied sub nom.*
    *Gilead Scis., Inc. v. St. Claire*, 129 S. Ct. 1993 (U.S. 2009) ....................................................... 2

7

8

*Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467 (C.D. Cal.
    1991) ........................................................................................................................................ 10

9

*Dental Health Prods., Inc. v. Ringo*, No. 08-C-1039, 2009 WL 1076883
    (E.D. Wis. Apr. 20, 2009)........................................................................................................... 6

10

*eBay Inc. v. Digital Point Solutions, Inc.*, 608 F. Supp. 2d 1156 (N.D. Cal.
    2009) ........................................................................................................................................... 6

11

12

*Facebook, Inc. v. Wallace*, No. c-09-798 JF, 2009 WL 3617789 (N.D. Cal.
    Oct. 29, 2009)............................................................................................................................. 3

13

*Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F.
    Supp. 2d 1122 (E.D. Cal. 2008)................................................................................................. 6

14

*Hedges v. United States*, 404 F.3d 744 (3d Cir. 2005)................................................................... 2

15

*Hokama v. E.F. Hutton & Co.*, 566 F. Supp. 636 (C.D. Cal. 1983) .............................................. 8

16

*Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC*, 270
    Fed. Appx. 570 (9th Cir. 2008)................................................................................................... 8

17

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008)........................................................ 2

18

*In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427 (N.D. Cal. 1988) ................................... 10

19

*Joe N. Pratt Ins. v. Doane*, No. V-07-07, 2008 WL 819011 (S.D. Tex. Mar.
    20, 2008) ..................................................................................................................................... 7

20

*Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760 (N.D. Ill. 2009) ......................................... 6

21

*MySpace, Inc. v. Globe.com, Inc.*, No. CV 06-3391-RGK, 2007 WL
    1686966 (C.D. Cal. Feb. 27, 2007)................................................................................... 3, 4, 5

22

23

*MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293 (C.D. Cal. 2007)..................................... 3, 4, 5

24

*Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal.
    2003) ........................................................................................................................................... 8

25

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ..................................................2, 7, 8, 11

26

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir.
    1986) ........................................................................................................................................... 7

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d
Cir. 1984) ......................................................................................................... 11

4

5

*Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp.
2d 1121 (W.D. Wash. 2000) .............................................................................. 6

6

*SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696 (N.D. Ill. 2009) .................................. 6

7

*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*,
661 F. Supp. 2d 1076 (D. Ariz. 2009)............................................................... 2

8

*Swift v. Zynga Game Network, Inc.*, No. C 09-05443 SBA, 2010 WL
4569889 (N.D. Cal. Nov. 3, 2010)........................................................... 8, 10, 11

9

10

*TEKsystems, Inc. v. Modis, Inc.*, No. 08C5476, 2008 WL 5155720 (N.D.
Ill. Dec. 5, 2008) ............................................................................................... 6

11

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................. 7, 11

12

*Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989 (9th Cir. 2006) ................... 9

13

**Statutes**

14

15 U.S.C. § 7702(5) ....................................................................................................... 3

15

15 U.S.C. § 7702(6) ....................................................................................................... 3

16

15 U.S.C. § 7704(a)(1) ................................................................................................... 3

17

18 U.S.C. § 1030(a)(4) ................................................................................................... 6

18

**Regulations and Rules**

19

Fed. R. Civ. P. 12(b)(6)................................................................................................. 1

20

Fed. R. Civ. P. 8(a)........................................................................................................ 6

21

Fed. R. Civ. P. 9(b) ............................................................................................... passim

22

**Other Authorities**

23

2 James Wm. Moore, *Moore's Federal Practice* § 12.34[1][a] (2008 ed.).................... 2

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION

Defendant Maxbounty, Inc. ("Maxbounty") has moved to dismiss just three of the seven causes of action raised in plaintiff Facebook, Inc. ("Facebook")'s complaint on Rule 12(b)(6) grounds.  Maxbounty's positions are inapposite to well-settled law.  First, as to Facebook's CAN-SPAM claims, courts within this circuit, including this Court, have previously found that Facebook messages fall within CAN-SPAM's definition of an electronic message.  Second, as to Facebook's Computer Fraud and Abuse Act claims, Maxbounty ignores the fact that courts within this circuit, as well as within the majority of circuits, do not require violations of the CFAA to satisfy Rule 9(b)'s heightened pleading requirements.  Finally, Maxbounty's argument that Facebook's common law fraud claim was not pled with sufficient particularity ignores Facebook's detailed complaint that explains in specifics the circumstances constituting the fraud at issue in this case.  The complaint details the fraudulent and deceptive advertising campaigns promoted by Maxbounty's affiliates on the Facebook website, and how Maxbounty substantially assists its affiliates and facilitates the execution of those campaigns.  Facebook has provided more than enough detail for Maxbounty to identify and respond to the allegations of fraud in the complaint.

Maxbounty's motion to dismiss should be denied, and the parties should be permitted to proceed with discovery.

## II.     ISSUES

1.     Does Facebook's complaint state a cause of action under CAN-SPAM based on the sending of unsolicited commercial communications on Facebook that are the same or similar to the actions that have previously been found to violate CAN-SPAM?

2.     Does Facebook's complaint state a cause of action under the CFAA where its allegations comply with the pleading standard adopted in the Ninth Circuit?

3.     Does Facebook's complaint allege fraud with sufficient particularity where it describes examples of fraudulent schemes conducted by Maxbounty's affiliates, and includes allegations of Maxbounty's knowledge of and activity supporting the fraudulent schemes?

## III.   ARGUMENT

**A.   Legal Standard:  Maxbounty Has the Burden to Show that There Is No Set of Facts that Would Entitle Facebook to Relief Based on the Allegations in the Complaint.**

A motion to dismiss should only be granted if, after taking all allegations in the complaint and the reasonable inferences to be drawn from those allegations as true, it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief.  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009); *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007).  A complaint cannot be dismissed based on the court's assessment that a plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)), *cert. denied sub nom. Gilead Scis., Inc. v. St. Claire*, 129 S. Ct. 1993 (U.S. 2009).  The defendant bears the burden of proving that no legally cognizable claim for relief exists.  *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 661 F. Supp. 2d 1076, 1083 (D. Ariz. 2009) (citing *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006); 2 James Wm. Moore, *Moore's Federal Practice* § 12.34[1][a] at 12-73 (2008 ed.)).

Maxbounty has failed to carry its burden as to all three claims at issue.

**B.   Communications Sent and Received on Facebook Are "Electronic Mail Messages" Within the Scope of the Act.**

Maxbounty's sole objection to Facebook's CAN-SPAM Act (the "Act") claim is that communications on Facebook's website are not "electronic mail messages" within the meaning of the Act because they are not sent from an email address expressed as "username@domain.com." Maxbounty's Motion to Dismiss ("Motion") at 3-4.  Maxbounty's position must be denied because case precedent and the plain language and legislative purpose of the Act establish that messages sent and received within the Facebook site qualify as "electronic mail messages" under the Act.

This Court need look no further than to prior court decisions, including prior decisions by this Court, to reject Maxbounty's attempt to escape liability for its CAN-SPAM violations.  The Central District of California has considered Maxbounty's exact argument on two separate occasions and has twice concluded that a communication sent to users on the social networking

PLAINTIFF FACEBOOK INC.'S OPP. TO MAXBOUNTY'S MOTION TO DISMISS
Case No. 08-CV-05780 JF

site MySpace.com qualified as an "electronic mail message" under the Act.  *See MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1300-01 (C.D. Cal. 2007) (rejecting a narrow interpretation of "electronic mail address" to include only traditional email and stating that "[t]he plain language of the definition of 'electronic mail address' entails nothing more specific than 'a destination . . . to which an electronic mail message can be sent'"); *MySpace, Inc. v. Globe.com, Inc.*, No. CV 06-3391-RGK, 2007 WL 1686966, at *4 n.3 (C.D. Cal. Feb. 27, 2007) (attached to the Declaration of James R. McCullagh in Support of Plaintiff Facebook's Opposition to Defendant Maxbounty's Motion to Dismiss Claims I, II, and III of Facebook's Complaint ("McCullagh Decl.") ¶ 2, Ex. A) (rejecting narrow interpretation of "electronic mail address" and stating that "[w]hile the statute references the phrase 'domain part', it is clearly not a required element, but merely used to illustrate how an electronic mail address is commonly expressed").  This Court has also previously found that sending messages to Facebook users and posting messages on Facebook users' walls fall within the acts regulated by CAN-SPAM.  *Facebook, Inc. v. Wallace*, No. c-09-798 JF, 2009 WL 3617789, at *2 (N.D. Cal. Oct. 29, 2009) (awarding $711,237,650 in damages under CAN-SPAM for Facebook messages sent by defendant) (attached as McCullagh Decl. ¶ 3, Ex. B).

The plain language of the Act firmly supports this precedent.  The Act states that it is unlawful for a person to "initiate the transmission" of a "commercial electronic mail message." 15 U.S.C. § 7704(a)(1).  An "electronic mail message" is a message sent to a unique "electronic mail address."  15 U.S.C. § 7702(6).  An "electronic mail address" is a:

> destination, commonly expressed as a string of characters, consisting of a unique user name or mailbox (commonly referred to as the "local part") and a reference to an Internet domain (commonly referred to as the "domain part"), whether or not displayed, to which an electronic mail message can be sent or delivered.

15 U.S.C. § 7702(5).

As courts have previously explained, the Act states only that an electronic mail message is "commonly expressed" as "username@domain.com," not that this is the only accepted iteration. *MySpace v. Wallace*, 498 F. Supp. 2d at 1300 ("Indeed, the word 'commonly' precedes the

PLAINTIFF FACEBOOK INC.'S OPP. TO
MAXBOUNTY'S MOTION TO DISMISS
Case No. 08-CV-05780 JF

1   description of an address with a domain part and local part, indicating that this formulation is only

2   one among many possible examples, rather than the exclusive way in which the Act recognizes

3   the expression of an address."); *see also Globe.com*, 2007 WL 1686966, at *4 n.3.  In *MySpace v.*

4   *Wallace*, the court elaborated:

5           [A]t the time the Act was passed in 2003, electronic messages could
6           be sent in many ways, including through "instant messaging," and
            the Court must presume that Congress was well-aware of these
7           various forms of electronic communications when it drafted the
            Act. The plain language of "electronic mail address" encompasses
8           these alternate forms while also recognizing that the most
            commonly used form of electronic address was the traditional
9           "email" address with a local part and domain part (i.e.,
            user@domain.com.).

10  498 F. Supp. 2d at 1300.  There is simply no requirement in the Act that qualifies electronic mail

11  messages as only those expressed as "username@domain.com."  Rather, the definition of an

12  electronic mail message only requires that there be a destination to which an electronic mail

13  message can be sent.

14          There can be no doubt that the complaint contains allegations that satisfy the Act's

15  definition of an electronic mail message.  Facebook's "suggest to friends" function allows a user

16  to send a message to selected friends inviting them to connect to a particular page.  Complaint

17  ¶ 22.  The complaint further alleges that "Defendant encourages its affiliates to deceptively

18  induce Facebook users to send unsolicited commercial messages (spam) to their friends" and by

19  "tricking Facebook users into executing malicious computer code that caused messages to be

20  automatically sent to all their Facebook friends."  Complaint ¶ 49.  In its Motion, Maxbounty

21  quotes paragraphs 61, 62, and 63 of the complaint, which contain allegations concerning

22  Maxbounty's liability for its participation and for inducing its affiliates to send electronic

23  messages through Facebook's computers to Facebook users.  Motion at 3, 4.

24          Moreover, even assuming that Maxbounty's restrictive definition of electronic mail

25  address is correct, which it is not, Maxbounty ignores the fact that the complaint alleges that

26  numerous users have set their account preferences to have notifications of Facebook messages,

27  wall posts and other activity associated with their Facebook accounts sent to a separate email

28  address.  Complaint ¶ 23.  As such, a significant number of Facebook users will not only receive

-4-      PLAINTIFF FACEBOOK INC.'S OPP. TO
         MAXBOUNTY'S MOTION TO DISMISS
         Case No. 08-CV-05780 JF

1   the unsolicited commercial messages procured or initiated by Maxbounty directly on the

2   Facebook site, but they will also receive a second copy that was sent to a separate email address,

3   which is expressed as "username@domain.com." Such messages would be actionable under the

4   Act even under Maxbounty's incorrect, restrictive interpretation. *See Globe.com*, 2007 WL

5   1686966, at *5 (messages sent to users on MySpace.com qualify under the Act in part because

6   when a message is sent on the MySpace site, a companion message is sent to the recipient's

7   alternate email address). Thus, even if a restrictive definition of electronic mail message is used,

8   the complaint includes allegations that are sufficient to satisfy the Act's definition of an electronic

9   mail message.

10          In addition to the clear case precedent recognizing that the communications alleged in the

11   complaint satisfy the Act's definition, Maxbounty's restrictive interpretation of the Act is contrary

12   to the Act's legislative purpose to "safeguard the convenience and efficiency of the electronic

13   messaging system, and to curtail overburdening of the system's infrastructure." *MySpace v.*

14   *Wallace*, 498 F. Supp. 2d at 1300 (citing 15 U.S.C. § 7701(a) and *Globe.com*, 2007 WL

15   16869696, at *4). Facebook's millions of users use Facebook to communicate with their friends

16   and trust the authenticity of communications sent on Facebook. *See* Complaint ¶¶ 10-11.

17   Facebook spends a significant amount of resources identifying, removing and preventing

18   unsolicited commercial messages such as those initiated by Maxbounty. Complaint ¶ 54. It

19   would be antithetical to the Act's broad legislative purpose to exclude from its protection the

20   electronic messaging systems used by millions of persons on a daily basis. *See MySpace v.*

21   *Wallace*, 498 F. Supp. 2d at 1300 ("To interpret the Act in the limited manner as advocated by

22   Defendant would conflict with the express language of the Act and would undercut the purpose

23   for which it was passed.").

24          Thus, regardless of how the issue is approached, the result is the same. The

25   communications alleged in the complaint fall within the Act's definition of an electronic mail

26   message. Maxbounty's motion to dismiss Facebook's CAN-SPAM claim should be denied.

27

28

PLAINTIFF FACEBOOK INC.'S OPP. TO
MAXBOUNTY'S MOTION TO DISMISS
Case No. 08-CV-05780 JF

**C.      Claims Under the CFAA Are Not Subject to the Heightened Pleading Standard of Rule 9(b).**

A plaintiff asserting a claim under Section 1030(a)(4) of the CFAA must prove that the defendant "knowingly and with intent to defraud" accessed a protected computer without authorization, or exceeded the authorized access, and by means of such conduct "further[ed] the intended fraud."  18 U.S.C. § 1030(a)(4).  Maxbounty recognizes that allegations of knowledge and intent are not subject to Rule 9(b)'s heightened pleading standard, but erroneously contends that Facebook must plead with particularity facts that establish it "furthered the intended fraud."  Motion at 6 (citing *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 765 (N.D. Ill. 2009)).

Maxbounty's reliance on *Motorola* is misplaced.  The majority of courts considering this issue, including the courts of this circuit, have held that claims under the CFAA are subject only to the notice pleading requirements of Rule 8(a), not Rule 9(b).  In *eBay Inc. v. Digital Point Solutions, Inc.*, this Court held that the CFAA "only requires a showing of unlawful access; there is no need to plead the elements of common law fraud to state a claim under the Act."  608 F. Supp. 2d 1156, 1164 (N.D. Cal. 2009) (citing *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1131 (E.D. Cal. 2008)); *see also Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1125-26 (W.D. Wash. 2000) (holding that the term "defraud" for purposes of § 1030(a)(4) simply means "wrongdoing").  A majority of courts in other jurisdictions have also held that claims under the CFAA are not subject to the heightened pleading standard of Rule 9(b).  *See SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 719 n.13 (N.D. Ill. 2009) ("[Section 1030(a)(4) does not] require an allegation of fraud; intent to defraud is not the same and does not implicate the heightened standard.");  *Dental Health Prods., Inc. v. Ringo*, No. 08-C-1039, 2009 WL 1076883, at *8 (E.D. Wis. Apr. 20, 2009) (attached as McCullagh Decl. ¶ 4, Ex. C) ("While a violation of section 1030(a)(4) requires that the defendant act with intent to defraud, fraud *per se* is not an element. Thus, the particularity requirement of Rule 9(b) does not apply.");  *TEKsystems, Inc. v. Modis, Inc.*, No. 08C5476, 2008 WL 5155720, at *5 (N.D. Ill. Dec. 5, 2008) (attached as McCullagh Decl. ¶ 5, Ex. D);  *Joe N. Pratt Ins. v. Doane*,

PLAINTIFF FACEBOOK INC.'S OPP. TO
MAXBOUNTY'S MOTION TO DISMISS
Case No. 08-CV-05780 JF

1   No. V-07-07, 2008 WL 819011, at *9 (S.D. Tex. Mar. 20, 2008) (attached as McCullagh Decl.

2   ¶ 6, Ex. E).

3        Maxbounty's Motion as to Facebook's CFAA claim should be denied because a

4   heightened pleading standard is not required.  However, assuming *arguendo* that Rule 9(b)

5   applies to the limited element of showing that Maxbounty "furthered the intended fraud," the

6   allegations of the complaint, as discussed below, sufficiently meet this heightened pleading

7   standard.

8   **D.**     **Facebook's Complaint Pleads Fraud with Particularity.**

9        Maxbounty asserts that the complaint fails to allege Maxbounty's inducement of and

10   conspiracy to commit fraud against Facebook with sufficient specificity to meet the heightened

11   pleading standard of Rule 9(b).  Contrary to Maxbounty's two-paragraph argument that Facebook

12   has failed to meet the standards for pleading common law fraud, Facebook's detailed complaint

13   describes with specificity the circumstances constituting Maxbounty's inducement of and

14   conspiracy to commit fraud.

15
16       1.     **Rule 9(b) Requires that a Plaintiff Plead the Circumstances Constituting Fraud with Particularity, but Allegations of Knowledge and Intent May Be Alleged Generally.**

17        Under Rule 9(b), "a party must state with particularity the circumstances constituting

18   fraud," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged

19   generally."  Fed. R. Civ. P. 9(b).  "[A] plaintiff must set forth more than the neutral facts

20   necessary to identify the transaction.  The plaintiff must set forth what is false or misleading

21   about a statement, and why it is false."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th

22   Cir. 2003) (internal quotation and citation omitted).  This heightened pleading standard is

23   described as requiring the "who, what, where, when, and how" of the misconduct charged.  *Id.* at

24   1102.  This particularity is required "so that the defendant can prepare an adequate answer from

25   the allegations."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (quoting *Schreiber*

26   *Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986)).  Rule 9(b) does not

27   require the pleading of "detailed evidentiary matter."  *Hokama v. E.F. Hutton & Co.*, 566 F. Supp.

28   636, 645 (C.D. Cal. 1983).  And, any allegations regarding the state of mind of the defendant may

PLAINTIFF FACEBOOK INC.'S OPP. TO
MAXBOUNTY'S MOTION TO DISMISS
Case No. 08-CV-05780 JF

1  be alleged generally.  *Odom*, 486 F.3d at 553 ("We conclude that plaintiffs may aver scienter

2  generally, just as the rule states—that is, that scienter existed.") (internal quotations and citations

3  omitted).

4      Facebook's complaint is full of detailed allegations describing Maxbounty's and its

5  affiliates' fraudulent activities.  While Facebook anticipates that it will likely obtain additional

6  information supporting its claims during discovery, the information currently in the complaint is

7  sufficient for Maxbounty to identify the source of the fraud and respond to Facebook's

8  allegations.

9       2.    **Facebook's Complaint Sets Forth the Circumstances Constituting Fraud and Maxbounty's Contributions to This Fraud in Detail.**

10  A claim of aiding and abetting fraud under California law requires that the plaintiff

11  demonstrate that the defendant had actual knowledge of the primary violation and "substantially

12  assisted" the primary actor's fraud; in other words, that the defendant's actions were a "substantial

13  factor" in causing harm to plaintiff.  *Impac Warehouse Lending Grp. v. Credit Suisse First Boston*

14  *LLC*, 270 Fed. Appx. 570, 572 (9th Cir. 2008) (citing *Neilson v. Union Bank of Cal., N.A.*, 290 F.

15  Supp. 2d 1101 (C.D. Cal. 2003)).  Facebook's complaint asserts with specificity the fraud at issue:

16  that Maxbounty's affiliates made false representations to Facebook in asserting that they were in

17  compliance with Facebook's Terms while creating Pages on the Facebook site that violated those

18  Terms.  Complaint ¶¶ 85-88.  The complaint also asserts that Maxbounty provides substantial

19  assistance in furtherance of this fraud by providing technical support, suggestions for Pages, and

20  financial incentives to affiliates who created these Pages.  Complaint ¶¶ 43-45, 85-87.  This

21  information is sufficient to allow Maxbounty to identify the source of the fraud and to respond to

22  the complaint.

23  The factually-similar case *Swift v. Zynga Game Network, Inc.* is illustrative.  No. C 09-

24  05443 SBA, 2010 WL 4569889 (N.D. Cal. Nov. 3, 2010) (attached as McCullagh Decl. ¶ 7

25  Ex. F).  Swift alleged that Zynga, a company that makes software games for interactive play on

26  Facebook and other social networking sites, including the popular game Farmville, incorporated

27  "special offer" advertisements into the games that misled users into signing up for unwanted

28

-8-

1    subscription services.  *Id.* at *2.  The complaint described in detail the operation of the

2    advertisements and how they were deceptive.  *Id.* at *7-8.  The court denied defendants' motion to

3    dismiss, holding that Swift had sufficiently alleged her claims of fraud:  Swift asserted with

4    specificity the "who" as the companies named as the defendants, who "provided, funded, created

5    and developed" the deceptive offers; the "where" as the specific games and websites involved;

6    and the "what" and "how" as the deceptive offers and transactions, which Swift described in

7    detail.  *Id.* at 7-8.  Similarly, Facebook's complaint identifies the "who" as Maxbounty and its

8    affiliates, asserting that Maxbounty provided financial and technical support in support of its

9    affiliates' fraudulent pages.  Complaint ¶¶ 46-51.  Facebook's complaint also identifies the

10   "where", "what", and "how" of the fraud by describing in detail two specific fraudulent

11   campaigns enacted by Maxbounty's affiliates on Facebook, advertising two specific promotions—

12   a $250 MAC Gift Card and a free iPad—and identifies the third-party websites that the

13   promotions were directed to—Better-Gifts.com and Superb-Rewards.net.  Complaint ¶¶ 46-51.

14   This information allows Maxbounty to identify when it ran these promotions, which of its

15   affiliates created the fake Pages, and which of its employees interacted with these affiliates.

16        Facebook also specifically stated the elements of a cause of action of conspiracy to

17   commit fraud.  A claim for conspiracy to commit fraud under California law must simply state

18   facts supporting the formation and operation of the conspiracy, the wrongful acts done pursuant

19   thereto, and the damage resulting from the conspiracy.  *Wasco Prods., Inc. v. Southwall Techs.,*

20   *Inc.*, 435 F.3d 989, 991 (9th Cir. 2006); *see also* CACI 3600 (the essential factual elements of a

21   conspiracy are that (a) defendant was aware that the primary actor planned to commit a wrongful

22   act and (b) that the defendant agreed with the primary actor and intended that the act be

23   committed).  In *Swift*, the plaintiff also asserted claims against Adknowledge, an "offer

24   aggregator" who worked with Zynga to connect the fraudulent offers to third party advertisers.

25   2010 WL 4569889 at *2.  Swift's complaint asserted that Adknowledge worked in concert with

26   Zynga to help create the advertisements that drove traffic to Adknowledge's clients, and received

27   payment from those clients for the traffic driven by the deceptive ads.  *Id.* at *9.  The court held

28   that these facts were sufficient to raise the inference of Adknowledge's participation in a

-9-     PLAINTIFF FACEBOOK INC.'S OPP. TO
        MAXBOUNTY'S MOTION TO DISMISS
        Case No. 08-CV-05780 JF

1    fraudulent conspiracy.  *Id.*  Facebook's complaint similarly asserts that Maxbounty recruits its

2    affiliates to create advertisements that direct traffic to its customers' websites (Complaint ¶ 42),

3    that in order to drive a large amount of traffic to these websites, Maxbounty's affiliates create

4    deceptive and misleading Facebook Pages that violate Facebook's Terms (Complaint ¶¶ 39-52),

5    that Maxbounty actively assists in the creation of fraudulent Pages, and earns revenue from its

6    customers for its affiliates' fraud (Complaint ¶¶ 85-89).  As in *Swift*, these facts are sufficient to

7    state the basic elements of a claim of conspiracy to commit fraud.  Based upon these facts,

8    Facebook generally alleged Maxbounty's scienter in having actual knowledge of its affiliates'

9    fraud, agreeing to work with its affiliates to create fraudulent Pages, and intending that its

10   affiliates defraud Facebook and its users.  Complaint ¶¶ 85-89.  The complaint also alleged that

11   Facebook and its users suffered damage as a result of this conspiracy.  Complaint ¶ 95.

12        Maxbounty argues that Facebook's use of the phrase "upon information and belief" is fatal

13   to the fraud claim.[1]  Motion at 6-8.  Here, Facebook has asserted its claims of inducement and

14   conspiracy to commit fraud without reference to "information and belief."  *See* Complaint ¶¶ 86-

15   89.  Facebook has likewise explained in detail and without reference to "information and belief"

16   examples of the fraudulent advertising campaigns.  Complaint ¶¶ 46, 47, 50, 52.

17        To the extent that the complaint includes allegations that are based "upon information and

18   belief," these are not conclusory allegations; the facts supporting these allegations are described

19   in detail.  Even Maxbounty acknowledges that fraud allegations can be based on "information and

20   belief" if the complaint "sets forth the facts on which the belief is founded."  Motion at 6 (citing

21   *Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991)); *see also*

22   *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1432-33 (N.D. Cal. 1988).  For example,

23   the complaint alleges that Maxbounty receives payment from its advertisers for traffic driven to

24   their websites (Complaint ¶ 42), that Maxbounty's affiliates promoted at least two schemes to

25   fraudulently induce Facebook users to visit websites that paid Maxbounty for the traffic

26   _____

27        [1] Facebook's complaint introduces statements describing Maxbounty's knowledge of and assent to
     its affiliates' activities "upon information and belief."  Facebook assumes that Maxbounty does not take
     issue with the sufficiency of these allegations under Rule 9(b).  *See* Fed. R. Civ. P. 9(b)  (knowledge and

28   belief can be averred generally).

PLAINTIFF FACEBOOK INC.'S OPP. TO
MAXBOUNTY'S MOTION TO DISMISS
Case No. 08-CV-05780 JF

1   (Complaint ¶¶ 46, 47, 48, 50), that Maxbounty knows that the representations made by its

2   affiliates are false (Complaint ¶¶ 86, 88), that Maxbounty assisted and encouraged its affiliates to

3   create Facebook Pages advertising products or services that are not in face delivered or even

4   available as advertised (Complaint ¶ 87), and that Maxbounty induces its affiliates to make

5   fraudulent representations (Complaint ¶ 89).  These allegations are sufficient to allege

6   Maxbounty's participation in the fraudulent scheme.  *See Swift*, 2010 WL 4569889, at *9

7   (plaintiff's assertion "on information and belief" that defendant Adknowledge participated in the

8   creation and development of the deceptive advertisements and received a portion of the funds

9   received was sufficient to plead Adknowledge's role in the scheme).

10          Maxbounty also contends that Facebook's allegations of Maxbounty's knowledge or intent

11   do not meet even the notice pleading standard of Rule 8(a).  Motion at 7 (citing *Ashcroft v. Iqbal*,

12   __ U.S. __, 129 S. Ct. 1937 (2009)).  Facebook's allegations of knowledge and intent are not

13   simple conclusory statements, however, they are reasonable inferences based on the facts.  The

14   purpose of the heightened pleading standard for allegations of fraud is primarily to ensure that the

15   plaintiff has described the circumstances of the fraudulent activity in sufficient detail to allow the

16   defendant to respond to the allegations.  *Odom*, 486 F.3d at 553; *see also Seville Indus. Mach.*

17   *Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) ("It is certainly true that

18   allegations of "date, place or time" [meet the Rule 9(b) standard], but nothing in the rule requires

19   them.  Plaintiffs are free to use alternative means of injecting precision and some measure of

20   substantiation into their allegations of fraud.").  As detailed above, the information provided by

21   Facebook in its complaint is sufficient for Maxbounty to identify the fraudulent conduct and

22   prepare a response.[2]

23

24

25   _____

26          [2] In the event that the Court believes that the complaint does not plead fraud with adequate
     specificity, Facebook requests leave to amend.  *Vess*, 317 F.3d at 1108.  Providing Facebook with leave to
27   amend will allow Facebook to cure any perceived defect.  Facebook has already provided some of this
     information to Maxbounty informally when it requested that Maxbounty preserve all information relevant
28   to the complaint including information from its employee Adam Harrison.  McCullagh Decl. ¶ 8, Ex. G
     (email from Ewbank to LeRoy, Oct. 28, 2010).

-11-                          PLAINTIFF FACEBOOK INC.'S OPP. TO
                                      MAXBOUNTY'S MOTION TO DISMISS
                                      Case No. 08-CV-05780 JF

1

IV.    CONCLUSION

2      Maxbounty's Motion to Dismiss the first three of the seven claims in the complaint should

3 be denied because (1) Facebook messages fall within CAN-SPAM's definition of electronic mail

4 messages; (2) CFAA claims do not need to be plead under the heightened specificity required by

5 Rule 9(b) ; and (3) Facebook's complaint alleges fraud with sufficient specificity such that

6 Maxbounty should know the exact nature of the alleged fraudulent activity.  A proposed order is

7 attached to this motion.

8 DATED:  January 21, 2011                     **PERKINS COIE** LLP

9

10                                         By:  _James R. McCullagh_
                                               Brian P. Hennessy, Bar No. 226721
11                                             BHennessy@perkinscoie.com
                                               James R. McCullagh, *pro hac vice*
12                                             JMcCullagh@perkinscoie.com
                                               Joseph P. Cutler, *pro hac vice*
13                                             JCutler@perkinscoie.com
                                               3150 Porter Drive
14                                             Palo Alto, CA  94304-1212
                                               Telephone:  650.838.4300
15                                             Facsimile:  650.838.4350

16                                             Attorneys for Facebook, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF FACEBOOK INC.'S OPP. TO
                                               MAXBOUNTY'S MOTION TO DISMISS
                                               Case No. 08-CV-05780 JF