Brian P. Hennessy, State Bar No. 226721
BHennessy@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650.838.4300
Facsimile: 650.838.4350

James R. McCullagh, *pro hac vice*
JMcCullagh@perkinscoie.com
Joseph P. Cutler, *pro hac vice*
JCutler@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FACEBOOK, INC., a Delaware corporation,

Plaintiff,

v.

MAXBOUNTY, INC., a Canadian corporation,

Defendant.

**Case No. 10-CV-4712-JF**

**PLAINTIFF FACEBOOK, INC.'S OPPOSITION TO MAXBOUNTY, INC.'S MOTION TO DISMISS COUNTS I, II AND III OF FACEBOOK'S FIRST AMENDED COMPLAINT**

Hearing Date: July 8, 2011
Time: 9:00 a.m.

FACEBOOK, INC.'S OPPOSITION TO MAXBOUNTY, INC'S MOTION TO DISMISS COUNTS I, II, AND III OF THE FAC
Case No. 10-CV-4712-JF

## TABLE OF CONTENTS

| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. FACTS | 1 |
| III. ARGUMENT | 2 |
| A. MaxBounty's Motion For Reconsideration of Facebook's CAN-SPAM and CFAA Claims Fails to Comply with L.R. 7-9 and Must Be Denied | 2 |
| 1. Legal Standard | 2 |
| 2. MaxBounty's Motion for Reconsideration of Facebook's CAN-SPAM and CFAA Claims Is Procedurally Deficient | 2 |
| 3. MaxBounty Has Identified No Grounds on Which a Motion for Reconsideration Could be Permitted as to Facebook's CAN-SPAM or CFAA Claims | 3 |
| B. Even If Not an Improper Request for Reconsideration, MaxBounty's Request to Dismiss Facebook's CAN-SPAM and CFAA Claims Fail on the Merits | 4 |
| 1. MaxBounty's Request to Dismiss Facebook's CAN-SPAM Claim Is Contrary to the Plain Language of the Act | 4 |
| 2. MaxBounty's CFAA Argument Ignores Ninth Circuit Precedent | 6 |
| C. Facebook's First Amended Complaint Pleads Fraud with Particularity | 7 |
| IV. CONCLUSION | 11 |

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (U.S. 2009) .......... 6, 8

*AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F.Supp.2d 1174 (E.D. Cal. 2010) .......... 6

*Bangura v. Hansen*, 434 F.3d 487 (6th Cir. 2006) .......... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 6, 8

*Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2007 WL 2349338 (N.D. Cal. Aug. 14, 2007) .......... 2

*Hedges v. United States*, 404 F.3d 744 (3d Cir. 2005) .......... 8

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) .......... 8

*Liao v. Ashcroft*, No. C 08-2776PJH, 2009 WL 1033393 (N.D. Cal. Apr. 16, 2009) .......... 2

*LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) .......... 6, 7

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) .......... 8, 11

*Patito v. Downey Savings & Loan Ass'n, F.A.*, No. C 09-03574 JF (HRL), 2010 WL 476723 (N.D. Cal. Feb 3, 2010) .......... 2

*Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 661 F. Supp. 2d 1076 (D. Ariz. 2009) .......... 8

*Taylor v. Higgins*, No. C 07-5295 MHP (PR), 2009 WL 224953 (N.D. Cal. Jan. 29, 2009) .......... 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*U.S. v. Nosal*,
__ F. 3d __, 2011 WL 1585600 (9th Cir. Apr. 28, 2011) ........ 7

**FEDERAL STATUTES**

15 U.S.C. § 7702(9) ........ 4

15 U.S.C. § 7702(12) ........ 4

15 U.S.C. § 7704(a) ........ 4

17 U.S.C. § 7704(a)(2) ........ 6

18 U.S.C. § 1030(a)(4) ........ 6

**RULES**

Civ. L.R. 7-9 ........ 2, 3

Civ. L.R. 7–9(b) ........ 2

Civ. L.R. 7–9(b)(3) ........ 2

Civ. L.R. 7–9(c) ........ 2

**OTHER AUTHORITIES**

2 James Wm. Moore, *Moore's Federal Practice* § 12.34[1][a] at 12-73 (2008 ed.) ........ 8

Federal Trade Commission, "16 CFR pt. 316 Definitions and Implementation Under the CAN-SPAM Act; Final Rule," Federal Register, Vol. 73, No. 99 (May 21, 2008) ........ 5

## I. INTRODUCTION

Undeterred by the Court's prior denial of its request for dismissal of Facebook's CAN-SPAM Act and Computer Fraud and Abuse Act ("CFAA") claims, MaxBounty has now improperly dressed up a motion for reconsideration as a motion to dismiss. MaxBounty's attempt for a second bite at the apple is improper and should be denied. MaxBounty's renewed motion to dismiss Facebook's fraud claim should also be denied. Facebook's First Amended Complaint ("FAC") includes specific allegations addressing each of the items identified by the Court's March 28, 2011 Order. Faced with specific facts identifying specific individuals and specific examples of MaxBounty's complicity with the fraud perpetrated on Facebook, MaxBounty stubbornly argues that even this level of specificity is not enough. MaxBounty's motion to dismiss is a dilatory tactic that should be denied.

## II. FACTS

MaxBounty first sought dismissal of Facebook's CAN-SPAM, CFAA and fraud claims in December 2010. Dkt. 11. The Court denied MaxBounty's request to dismiss Facebook's CAN-SPAM and CFAA claims, finding that Facebook sufficiently pleaded both. Order Granting in Part and Denying in Part Motion to Dismiss (Dkt. 35) ("Order") at 8, 9. The Court granted MaxBounty's motion to dismiss Facebook's common law fraud claim with leave to amend, finding that the claim needed additional specificity.

On April 19, 2011, Facebook filed its FAC. Dkt. 36. Facebook provided additional, specific, and detailed facts to support its fraud claim, but made no substantive changes to its CAN-SPAM or CFAA claims. *Compare* Dkt. 1 to Dkt. 36. On May 13, 2011, MaxBounty filed a second motion to dismiss the same three claims addressed in its first motion to dismiss. Dkt. 40 ("Motion").

FACEBOOK, INC.'S OPPOSITION TO MAXBOUNTY, INC'S MOTION TO DISMISS COUNTS I, II, AND III OF THE FAC -1- Case No. 10-CV-4712-JF

## III. ARGUMENT

### A. MaxBounty's Motion For Reconsideration of Facebook's CAN-SPAM and CFAA Claims Fails to Comply with L.R. 7-9 and Must Be Denied.

#### 1. Legal Standard

MaxBounty couches its motion as a "motion to dismiss"; however, as to Facebook's CAN-SPAM and CFAA claims MaxBounty's motion is nothing more than a motion for reconsideration. MaxBounty did not request leave to file such a motion. Moreover, MaxBounty has not satisfied any of the limited grounds on which a motion for reconsideration would be permitted.

Motions for reconsideration are governed by Civil Local Rule ("L.R.") 7-9, which mandates that "no party may notice a motion for reconsideration without first obtaining leave of court . . ." L.R. 7-9 also provides that a motion for reconsideration must make a specific showing that: (1) a material difference in fact or law exists from that which was presented to the Court before entry of the first order, and that despite reasonable diligence the moving party did not know of this fact or law; (2) new material facts or a change of law occurred after the first order; or (3) the court's prior order was manifestly unjust. L.R. 7-9(b). Furthermore, the motion may not repeat any oral or written argument previously made with respect to the interlocutory order that the party seeks to have reconsidered. L.R. 7-9(c). If a party fails to present in its initial motion an argument that it could have raised, that argument is deemed waived for purposes of the motion for reconsideration. *See Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2007 WL 2349338, at *7 (N.D. Cal. Aug. 14, 2007) ("[t]he rationale underlying Local Rule 7-9(b)(3) is clear: in our system it is the job of the advocates, not the court, to find and apply relevant law to the facts of a particular case. If an advocate fails to do so, the court cannot be faulted for reaching an erroneous conclusion, and the advocate should not be given a 'second bite at the apple.'").

#### 2. MaxBounty's Motion for Reconsideration of Facebook's CAN-SPAM and CFAA Claims Is Procedurally Deficient.

MaxBounty's motion should be denied because it has failed to meet the prerequisite of requesting leave to file a motion for reconsideration. *See Patito v. Downey Savings & Loan Ass'n, F.A.*, No. C 09-03574 JF (HRL), 2010 WL 476723, at *1 (N.D. Cal. Feb 3, 2010) (finding motion procedurally improper, but *pro se* plaintiff allowed to proceed); *Liao v. Ashcroft*,

No. C 08-2776PJH, 2009 WL 1033393 (N.D. Cal. Apr. 16, 2009) (denying motion outright for failure to request leave).

However, even if the Court allows MaxBounty's motion to proceed as a request for leave to file a motion for reconsideration, its request should be denied because MaxBounty has not identified a single basis upon which a motion for reconsideration could be granted.

**3. MaxBounty Has Identified No Grounds on Which a Motion for Reconsideration Could be Permitted As To Facebook's CAN-SPAM or CFAA Claims.**

The Court previously denied MaxBounty's request to dismiss Facebook's CAN-SPAM Act and CFAA claims. Nothing has changed since the Court's Order. The sufficiency of Facebook's pleadings as to these claims has already been decided.

In its first motion to dismiss, MaxBounty chose to argue only that communications on Facebook's website are not "electronic mail messages" within the meaning of the CAN-SPAM Act. Dkt. 11 at 3-4. Having failed on that argument, MaxBounty now tries a new argument targeting the exact same allegations that were previously found to sufficiently plead a CAN-SPAM cause of action. *Compare* Complaint (Dkt. 1) ¶¶ 58-74 *with* FAC (Dkt. 36) ¶¶ 63-80. And, MaxBounty now requests dismissal of Facebook's CFAA claim on the grounds that the complained-of actions did not "exceed[] authorized access." Motion at 4-5. MaxBounty's motion relies on no new facts, and MaxBounty cites to no new law that was not available to it when it originally moved to dismiss this claim.

None of the new arguments submitted by MaxBounty satisfy any of the limited circumstances in which a party may request reconsideration. MaxBounty provides no explanation as to why it did not present the pre-existing case law it now relies upon in its prior motion to dismiss. Nor has it presented any evidence that a new material fact or change in law emerged following the initial order, or that the Court's Order was manifestly unjust. *See* L.R. 7-9. MaxBounty has no grounds for reconsideration of the prior Order. *See Taylor v. Higgins*, No. C 07-5295 MHP (PR), 2009 WL 224953, at *4 (N.D. Cal. Jan. 29, 2009) (denying motion to dismiss as an invalid motion for reconsideration where the court had previously found that plaintiff's complaint stated a claim on which relief could be granted).

FACEBOOK, INC.'S OPPOSITION TO MAXBOUNTY, INC'S MOTION TO DISMISS COUNTS I, II, AND III OF THE FAC
-3-
Case No. 10-CV-4712-JF

**B. Even If Not an Improper Request for Reconsideration, MaxBounty's Request to Dismiss Facebook's CAN-SPAM and CFAA Claims Fails on the Merits.**

**1. MaxBounty's Request to Dismiss Facebook's CAN-SPAM Claim Is Contrary to the Plain Language of the Act.**

While the Court need not address MaxBounty's belated arguments on dismissal of Facebook's CAN-SPAM claim, they are easily dispatched.

MaxBounty first claims that Facebook has failed to state a claim because it has alleged that the victims of MaxBounty's scam, who MaxBounty does not know, ultimately send the subject messages. This ignores Facebook's allegations that (a) at least one of its affiliates, Mitchell Fillmore, sent subject messages; and (b) affiliates like Mr. Fillmore, in turn, duped Facebook users into sending additional messages. FAC ¶¶ 50-53. The CAN-SPAM Act's initiator liability provisions prevent MaxBounty from using victims of its viral schemes as shields.

The CAN-SPAM Act makes it unlawful for a person to "initiate the transmission" of a "commercial electronic mail message" that contains false or misleading header information or subject lines. 15 U.S.C. § 7704(a). Under the Act, "initiate" means "to originate or transmit such message or to *procure the origination or transmission of such message*." 15 U.S.C. § 7702(9) (emphasis added). To "procure" the origination or transmission of a message means "intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf." 15 U.S.C. § 7702(12).

The claims in both the Complaint and the FAC are the same with respect to allegations that MaxBounty initiated the transmission of unsolicited electronic mail messages to Facebook users. At MaxBounty's direction, Mr. Fillmore and other affiliates, who are Facebook users, sent such messages to other Facebook users, and so on and so forth. Complaint ¶ 49; FAC ¶ 54. Indeed, Facebook addressed this very issue in its opposition to MaxBounty's first motion to dismiss. *See* Dkt. 31 at 3-4. Facebook's complaint alleges that "Defendant encourages its affiliates to deceptively induce Facebook users to send unsolicited commercial messages (spam) to their friends" and "trick[s] Facebook users into executing malicious computer code that cause[s] messages to be automatically sent to all their Facebook friends." Complaint ¶ 49; FAC

¶ 54. Facebook further alleges that MaxBounty provides compensation to its affiliates for inducing Facebook users to send these messages to their friends. Complaint ¶ 42; FAC ¶ 42. MaxBounty pays its affiliates based on the amount of traffic driven to its customers' websites, which creates an incentive for MaxBounty's affiliates to maximize the number of Facebook users who are ultimately fed bogus offers. Complaint ¶ 42; FAC ¶ 42. MaxBounty is aware that its affiliates use Facebook to direct traffic to its customers' websites and pays its affiliates to do so. Complaint ¶¶ 43-44; FAC ¶¶ 49-53.

Through these acts, MaxBounty has "procured the origination or transmission" of the messages at issue. Indeed, the Federal Trade Commission, in fulfilling its rule-making duties, explains that the definition of "initiate" in the Act is expressly intended to include actions of affiliate marketers like MaxBounty:

> By agreeing in advance to pay an affiliate for sales to persons who come to a marketer's website as a result of an affiliate's referral, a seller or marketer creates an *inducement* for the affiliate to originate or transmit commercial email messages to the public. In the language of the Act, the seller induces another person — the affiliate — to *initiate* messages on the seller's behalf.

*See* Federal Trade Commission, 16 CFR Part 316 Definitions and Implementation Under the CAN-SPAM Act; Final Rule, 73 Fed. Reg. 29661 (May 21, 2008) (emphasis added).

The Complaint and the FAC both allege that MaxBounty is compensating its affiliates, and thereby inducing them to take the actions described in the complaint. Complaint ¶¶ 42-43; FAC ¶¶ 42-53. MaxBounty asserts that it cannot be liable because it simply hosts computer servers "behind the scenes" to manage Internet traffic between Internet advertisers and merchants who sell goods and services on the Internet in order to "ensure that the Internet advertisers who refer buying customers to merchants are paid appropriate referral fees." Motion at 4. This is directly contrary to the allegations in the complaint. Facebook has asserted that MaxBounty promised to provide advance payments to affiliates who engaged in deceptive campaigns on Facebook. Complaint ¶ 44; FAC ¶ 52. In Mr. Fillmore's case, he was offered an advance payment of $30,000 if he would agree to continue driving viral Facebook campaigns despite actual knowledge that Facebook had removed prior campaigns. FAC ¶ 52. MaxBounty's attempt

to twist *Twombly* notwithstanding, at this stage all reasonable inferences from the allegations in the complaint are to be taken as true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009).

Next, MaxBounty belatedly argues that since Facebook has not provided the exact header information in its Complaint or FAC, it cannot state a claim under the CAN-SPAM Act. First, Facebook has properly alleged that MaxBounty initiated messages sent to Facebook users in the campaigns. Complaint ¶¶ 46-48; FAC ¶¶ 44-48; *see also* Complaint ¶ 49; FAC ¶ 54 ("Defendant's affiliates accomplish this by inducing Facebook users to send the messages, by stating on the Facebook Page that users will not receive their free gift unless they send such a message to ALL their Facebook friends, and by tricking Facebook users into executing malicious computer code that causes messages to be automatically sent to all their Facebook friends."). Facebook alleged that none of the messages associated with these campaigns identify MaxBounty as the initiator despite the fact that MaxBounty initiated the messages. Complaint ¶ 49; FAC ¶ 54. By definition, each message contains false header information.[1] Second, MaxBounty ignores Facebook's allegations regarding deceptive subject lines (Complaint ¶ 66; FAC ¶ 72), which provide an independent basis for liability. *See* 17 U.S.C. § 7704(a)(2).

**2. MaxBounty's CFAA Argument Ignores Ninth Circuit Precedent.**

MaxBounty's Motion ignores recent Ninth Circuit case law that effectively negates its argument regarding Facebook's CFAA claim.[2] MaxBounty argues that, as Facebook users, both it and its affiliates have been granted access to the Facebook site and therefore cannot "exceed[] authorized access" within the meaning of 18 U.S.C. § 1030(a)(4), even if MaxBounty and its affiliates take actions that violate Facebook's terms of use. Motion at 7-9 (citing *LVRC Holdings, LLC v. Brekka*, 581 F.Supp.2d 1127 (9th Cir. 2009); *AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F.Supp.2d 1174 (E.D. Cal. 2010)). However, on April 28, 2011, the Ninth Circuit held that an

[1] MaxBounty's application of *Facebook v. ConnectU* (489 F.Supp.2d 1087 (N.D. Cal. 2007)) is baffling. There, the court dismissed the CAN-SPAM claims with leave to amend because Facebook did not allege that the "headers were misleading or false as to the *source* from which they originated, or in any other manner." *Id.*at 1094-95 (emphasis in original). Here, Facebook has alleged that messages associated with at least two campaigns initiated by MaxBounty were false and misleading, as they did not identify MaxBounty as the source.

[2] Notably, MaxBounty relies only on case law that existed prior to filing its first motion to dismiss in order to make this new argument.

FACEBOOK, INC.'S OPPOSITION TO MAXBOUNTY, INC'S MOTION TO DISMISS COUNTS I, II, AND III OF THE FAC

-6-

Case No. 10-CV-4712-JF

employee can, in fact, exceed authorized access under the CFAA by violating the employer's computer use restrictions. *U.S. v. Nosal*, __ F. 3d __, 2011 WL 1585600, at *1 (9th Cir. Apr. 28, 2011). *Nosal* distinguished *Brekka*, finding that the employer in *Brekka* had placed no use restrictions on the employee's access to its computers, and so the employee did in fact have authorization. *Id*. at *6. In contrast, the employer in *Nosal* had placed significant use restrictions on its employees' use of computer resources, which the employees knowingly exceeded. *Id*.

As applied to this matter, *Nosal* supports the Court's prior denial of MaxBounty's motion to dismiss. As it stands, the FAC asserts, and MaxBounty concedes, that it and its affiliates registered for Facebook accounts and accepted Facebook's terms of use, which placed restrictions on their use of the Facebook site. *See* Complaint ¶¶ 12, 31-39; FAC ¶¶ 12, 31-40. Facebook's allegations are unchanged in alleging MaxBounty knowingly exceeded their authorized access, with the specific intent to defraud Facebook and its users by inducing its affiliates to engage in illegal spamming campaigns that required Facebook users to send deceptive messages regarding deceptive Facebook pages to all their friends, and by taking other actions prohibited by Facebook's Statement of Rights and Responsibilities. Complaint ¶¶ 41-52; FAC ¶¶ 42-57.

Moreover, as Facebook alleges, MaxBounty solicited at least Fillmore to recreate illegal spam campaigns specifically designed to defraud Facebook users and did so knowing that those prior campaigns had been detected and shut down by Facebook. FAC ¶ 53. In discovery, Facebook expects to uncover the specific techniques created and offered by MaxBounty that were designed to spread spam and evade Facebook’s detection and abatement efforts.

Irrespective of Maxbounty’s defective and untimely request for the court to reconsider its prior ruling, Facebook has adequately pled a claim for relief under both CAN-SPAM and the CFAA. MaxBounty's renewed motion on these claims should be denied.

### C. Facebook's First Amended Complaint Pleads Fraud with Particularity

In granting Facebook leave to amend its complaint to perfect its common law fraud claim, the Court identified six specific areas where Facebook’s complaint lacked sufficient particularity. Those six areas were:

1. facts identifying who at MaxBounty had knowledge of the alleged scheme;

2.   facts identifying what the individuals at MaxBounty knew;

3.   facts identifying how MaxBounty contributed to the alleged fraud;

4.   facts identifying any of the affiliates responsible for creating the Facebook pages at issue;

5.   facts showing that MaxBounty had actual knowledge of the wrongful activity, its role in furthering the fraud or how MaxBounty provided substantial assistance in the wrongful activity; and

6.   facts supporting Facebook's allegations of conspiracy.

Order at 10-11.

Facebook addressed each of these areas in its FAC, but MaxBounty stubbornly argues that these detailed allegations still lack the specificity necessary to plead a claim for common law fraud. Motion at 10-12. MaxBounty is wrong.

A motion to dismiss a complaint should not be granted unless, after taking all allegations in the complaint and the reasonable inferences to be drawn from those allegations as true, it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Iqbal*, 129 S. Ct. at 1949; *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007). A complaint cannot be dismissed based on the court's assessment that a plaintiff will fail to find evidentiary support for his allegations or fail to prove his claim to the satisfaction of the factfinder. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Instead, the defendant bears the extremely high burden of proving that no legally cognizable claim for relief exists. *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 661 F. Supp. 2d 1076, 1083 (D. Ariz. 2009) (citing *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)); 2 James Wm. Moore *et al.*, *Moore's Federal Practice* § 12.34[1][a] (3d ed. 2008)).

MaxBounty cannot meet this burden, as the FAC addresses each of the areas identified by the Court with more than a minimum level of specificity to present a cognizable claim for fraud.

1.   <u>Who at MaxBounty had knowledge of the alleged scheme, what did those individuals know, and how did MaxBounty contribute to the fraud</u>:

Facebook added the following allegations to the FAC that directly address each of these questions with specificity:

> 49.  Defendant, through its employees, knowingly assists its affiliates in creating these Pages. For example, one of Defendant's employees, **Adam Harrison**, contacts affiliates who use Facebook Pages to generate customer traffic, **identifies himself as Defendant's Facebook Affiliate Manager, and encourages and directs these affiliates to make specific changes to their promotional Facebook Pages in order to make them more profitable to Defendant.**
>
> 50.  Defendant's employees, including at least Mr. Harrison and likely others, directly encourage certain of its affiliates to generate traffic for its contracting advertisers through fraudulent and deceptive means, including posting false and deceptive promotions on the Facebook site.
>
> 51.  In order to accomplish this, Defendant's employees, including at least Mr. Harrison and likely others, mislead its affiliates into believing that Defendant's campaigns are approved by Facebook, provide instruction and support on how to design these unauthorized Facebook campaigns, and provide substantial advance payments to its affiliates that agree to participate in these campaigns.

FAC ¶¶ 49-51 (emphasis added).

    2.    <u>Identify affiliates responsible for creating the Facebook pages at issue:</u>

The following allegations of the FAC identify at least one affiliate responsible for creating the Facebook pages at issue.

> 52.  For example, in March 2010, one of Defendant's affiliates, **Mitchell Fillmore,** created Facebook Pages that offered a free IKEA gift card using the same scheme as generally described in the paragraphs 44-48 above. **Mr. Fillmore** was then contacted by Mr. Harrison, who informed Mr. Fillmore that he was a MaxBounty Affiliate Manager for affiliates who create Pages on Facebook. Mr. Harrison provided **Mr. Fillmore** with technical help for designing Facebook Pages and for increasing the number of Facebook users who would receive notice and act upon the offers presented in Mr. Fillmore's Facebook Pages. Mr. Harrison also encouraged **Mr. Fillmore** to run other Facebook campaigns for other similar offers and to use techniques that were designed to increase the effectiveness of these campaigns.
>
> 53.  **Mr. Fillmore** followed the advice given by Mr. Harrison, but noticed many of his Facebook Pages were taken down by Facebook not long after they were posted. **Mr. Fillmore** grew concerned that his campaigns were not permitted by Facebook. When **Mr. Fillmore** raised these concerns to Mr. Harrison, **Mr. Harrison assured Mr. Fillmore that MaxBounty approved of the**

> **techniques used by Mr. Fillmore. He also offered Mr. Fillmore a $30,000 cash advance to continue creating similar Facebook Pages.**

FAC ¶¶ 52-53 (emphasis added).

3. Identify MaxBounty's knowledge of the wrong, MaxBounty's role in furthering the wrong, and MaxBounty's substantial assistance in the wrong:

With respect to Facebook's allegation that MaxBounty aided and abetted in the fraudulent schemes, the Court found that Facebook's original complaint had specifically described the primary wrong but that it had not sufficiently shown how MaxBounty knew that its affiliates were creating misleading Facebook pages or how it provided assistance to its affiliates. Order at 10. The FAC provides specifics of at least one instance in which an affiliate approached Adam Harrison, a MaxBounty employee and authorized agent for MaxBounty, with concerns that his techniques were not approved by Facebook, only to be reassured verbally (and with a promise of a $30,000 advance payment from MaxBounty) that MaxBounty approved of the specific techniques that the affiliate had used. FAC ¶¶ 49-53.

4. Factual support demonstrating an agreement between MaxBounty and its affiliates to engage in a fraudulent scheme:

The Court stated that in order to allege conspiracy to commit fraud, Facebook's complaint must include factual support demonstrating an agreement between MaxBounty and its affiliates to engage in a fraudulent scheme. Order at 11. The FAC explains that not only was Adam Harrison—a MaxBounty "Facebook Affiliate Manager"—aware of the types of deceptive campaigns being promoted by Mr. Fillmore and other affiliates on Facebook, he in fact helped Mr. Fillmore perfect his fraudulent schemes. FAC ¶¶ 52-53. When Mr. Fillmore became concerned about the legitimacy of the schemes, MaxBounty offered to pay Mr. Fillmore in advance if he would continue to create fraudulent pages. *Id.*

In short, Facebook has now provided detailed and specific facts concerning MaxBounty's involvement and complicity in just one of many deceptive and fraudulent Facebook schemes that were run through, and ultimately by, MaxBounty. The FAC also includes allegations describing two specific examples of deceptive and fraudulent schemes run by MaxBounty and its affiliates.

The primary purpose of the particularity requirement in pleading fraud is not to require a plaintiff to prove its case, but rather to provide notice to allow defendant to "prepare an adequate answer from the allegations." *Odom v. Microsoft Corp.*, 486 F.3d at 553 (internal quotation marks and citation omitted). Facebook's allegations in the FAC are more than sufficient for MaxBounty to prepare an answer. Indeed, it bears mention that the particularity and specific facts regarding MaxBounty's involvement in deceptive and fraudulent activities on Facebook that are included in the FAC were developed without any discovery directly from MaxBounty. Given the strong likelihood that MaxBounty possesses additional evidence related to its Facebook affiliate program, Facebook expects that it will uncover additional evidence of MaxBounty's involvement and complicity in the deceptive and fraudulent schemes through discovery.

## IV.   CONCLUSION

Facebook has amended its complaint and added ample detail to support its fraud claim, which is the only claim that is properly before the Court. MaxBounty's effort to again dismiss Facebook's CAN-SPAM and CFAA claims are procedurally improper and substantively deficient and should be denied. Facebook respectfully requests that the Court deny the MaxBounty's motion and allow Facebook to proceed with discovery on all seven claims as pled in the FAC.

DATED:  June 17, 2011                                **PERKINS COIE LLP**

By:  *James R. McCullagh*
James R. McCullagh, *pro hac vice*
JMcCullagh@perkinscoie.com
Brian P. Hennessy, Bar No. 226721
BHennessy@perkinscoie.com
Joseph P. Cutler, *pro hac vice*
JCutler@perkinscoie.com
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone:  650.838.4300
Facsimile:  650.838.4350

Attorneys for Facebook, Inc.