**E-Filed 9/14/2011**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MAXBOUNTY, INC., a Canadian corporation,<br><br>Defendants. | Case Number 5:10-cv-04712-JF (HRL)<br><br>ORDER[1] DENYING MOTION TO DISMISS<br><br>[Re: Docket no. 39] |

Pursuant to Fed. R. Civ. Pro. 12(b)(6), Defendant MaxBounty Inc. ("MaxBounty") moves to dismiss Claims One through Three asserted by Plaintiff Facebook, Inc. ("Facebook") for failure to state a claim upon which relief may be granted.  The First Amended Complaint ("FAC") includes claims for: (1) violation of 15 U.S.C. § 7701 ("CAN-SPAM Act"); (2) violation of 18 U.S.C. § 1030 ("Computer Fraud and Abuse Act"); (3) fraud; (4) tortious interference with contract; (5) breach of contract; (6) violation of 15 U.S.C. § 1125(c) (federal trademark dilution); and (7) violation of 15 U.S.C. § 1125(a) (false designation of origin). Facebook seeks compensatory, statutory, and punitive damages.

---

[1] This disposition is not designated for publication in the official reports.

# I. BACKGROUND

Facebook is a popular social networking website with more than 500 million active users. (FAC ¶ 10)  It is designed to be "a network that helps people communicate more efficiently and effectively with their friends, family, and co-workers."  (*Id*.)  To become a Facebook user an individual must provide his or her real identity.  (*Id*. at ¶¶ 11-12)  Commercial, political, and charitable organizations also may establish a presence on Facebook by creating "pages" to which users can connect their profiles.  (*Id*. at ¶ 14)  All users must agree to Facebook's statement of rights and responsibilities.  Facebook's advertising guidelines prohibit false, misleading, fraudulent, and deceptive advertisements.  (*Id*. at ¶ 38(c))  They also prohibit advertisements that are "deceptive or fraudulent about any offer made," (*Id*. at ¶ 38(d)), and any advertisement that includes a "discount or free offer . . . must link to a page that clearly and accurately offers the exact deal the advertisement has displayed . . . ."  (*Id*. at ¶38(h))  Moreover, advertisements that contain, facilitate or promote spam are prohibited, (*Id*. at ¶ 38(j)), and if obtaining the promoted benefit requires user enrollment in a third-party subscription service then that requirement must be stated both in the advertisement and on the Facebook page.  (*Id*. at ¶ 38(k))

MaxBounty is an advertising and marketing company that uses a network of publishers to drive traffic to its customers' websites.  Its marketing program is based on a cost-per-action model ("CPA").  As explained on MaxBounty's website, "an advertiser under the CPA model pays only when a specific action is taken on their website.  The advertiser defines the action in advance and only pays when the action is taken . . . [g]enerally speaking, the more involved the action, the higher a publisher would expect to be paid for generating it."[2]  MaxBounty acts as an intermediary between its network of publishers (advertisement content creators) and its customers (third-party advertisers).  MaxBounty appears to generate revenue for its CPA program through a shared compensation agreement with its network of publishers.

 Facebook alleges that MaxBounty engaged and continues to engage in impermissible advertising and commercial activity on Facebook.com.  (FAC  ¶¶ 41-42)  It asserts that

---

[2]This information is available on http://www.maxbounty.com/faq.cfm.

Case No. 5:10-cv-04712-JF (HRL)
ORDER DENYING MOTION TO DISMISS
(JFEX1)

MaxBounty misleads its affiliates "into believing that Defendant's campaigns are approved by Facebook . . . ." (*Id*. at ¶ 51)  It claims that MaxBounty facilitates traffic to its contracting advertiser websites by "provid[ing] instruction and support on how to design these unauthorized Facebook campaigns, and [by] provid[ing] substantial advance payments to its affiliates that agree to participate in these campaigns." (*Id*.)  Facebook also claims that MaxBounty's conduct has caused it economic damage, has "tainted the Facebook experience," has resulted in users' "real economic loss in the form of undisclosed subscription fees," and has caused and continues to cause significant harm to Facebook's reputation and goodwill.  (*Id*. at ¶¶ 58-59)

### A. The Alleged Fraudulent Scheme

Facebook alleges that MaxBounty, through its network of affiliates, creates Facebook pages that are intended to re-direct unsuspecting Facebook users away from Facebook.com to third-party commercial sites.  (FAC ¶¶ 42-57)  It provides examples of two such pages in the complaint.  (*Id*. at ¶¶ 44-48)  Both pages utilize a similarly structured, multi-step scheme:  in the first step, MaxBounty establishes a network of affiliates; in the second step, MaxBounty's affiliates create numerous Facebook pages that function like (and in effect are) advertisements; in the third step, the page displays a message indicating that upon registration a user will be able to take advantage of a "limited time offer," such as receiving a gift card or becoming a product tester for a high-end product (e.g. an Apple iPad); in the fourth step, the Facebook user is induced by the page and begins the registration process.  (*Id*.)  The registration process requires three discrete user actions: (1) to become a "fan" of the page, (2) to invite all of his or her Facebook friends to join to the page, and (3) to complete additional administrative registration requirements.  (*Id*. at ¶¶ 44, 47)  Upon completion of these requirements, Facebook users are not sent the promised item but instead are directed "to a domain registered to and managed by the Defendant that then redirected the user to a third-party commercial website . . . ." (*Id.* at ¶¶ 45, 50)  The third-party commercial site informs the user that he or she must complete still more steps in order to obtain the promised item.  (*Id*. at ¶¶ 46)  Such additional steps include signing up for numerous "sponsor offers," which typically are offers for memberships in subscription services.  (*Id*.)  Facebook asserts that "[MaxBounty] received payment for the traffic it delivered

1  to [the third-party commercial sites] based on the [number of] users who successfully completed

2  the steps to receive a free gift." (*Id.* at ¶¶ 46, 48)

3      **B. MaxBounty's Motion to Dismiss**

4          In a previous motion to dismiss (dkt. entry 11), MaxBounty argued that Facebook's claim

5  under the CAN-SPAM Act was insufficient as a matter of law because the "customer

6  advertisements Facebook complains about . . . are not email and therefore cannot give rise to a

7  claim under the CAN-SPAM Act." (Mot. to Dismiss, 1:9-11).  MaxBounty also contended that

8  Facebook's claim under the Computer Fraud and Abuse Act ("CFAA") failed to satisfy the

9  heightened pleading standard of Fed. R. Civ. Pro. 9(b), pointing out that a plaintiff must plead

10  with particularity "conduct which furthers the intended fraud." (Reply to Pl.'s Opp., 5:3-15).

11  Finally, MaxBounty argued that Facebook failed to plead adequately the elements of its state law

12  claims for fraud, aiding and abetting, and conspiracy. (MTD, 1:18-23; 6:23-7:13).  On March 28,

13  2011, this Court denied MaxBounty's motion to dismiss Facebook's CAN-SPAM and CFAA

14  claims, concluding that Facebook had pled both claims sufficiently. (Order Granting in Part and

15  Denying in Part Motion to Dismiss, at 8, 9)  The Court granted MaxBounty's motion with

16  respect to Facebook's common law fraud claim, finding that the claim needed additional

17  specificity. (Order at 10, 11)  Facebook filed the operative FAC on April 19, 2011.

18          MaxBounty filed the instant motion on May 13, 2011, asserting that Facebook still has

19  failed to plead MaxBounty's role in the alleged fraud with sufficient particularity, and that in

20  light of Facebook's amended allegations the Court no longer may draw any reasonable inference

21  that would allow Facebook to prevail on its CAN-SPAM and CFAA claims.

22                          **II.  LEGAL STANDARD**

23          "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

24  cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

25  *Centinela Hosp. Center*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to

26  dismiss, "all allegations of material fact are taken as true and construed in the light most

27  favorable to the nonmoving party." *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-338 (9th

28  Cir. 1996).  However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does

not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) (internal citations omitted).  Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.  *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

## III.  DISCUSSION

### A. Fraud

#### 1. Rule 9(b) Standard

Under Fed. R. Civ. Pro. 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  However, intent, knowledge, and other conditions of the mind may be averred generally.  Fed. R. Civ. Pro. 9(b).  A complaint meets this standard if it alleges "'the time, place, and content of the alleged fraudulent misrepresentation or omission; the identity of the person engaged in the fraud; and the circumstances indicating falseness' or 'the manner in which [the] representations [or omissions] were false and misleading.'"  *Genna v. Digital Link Corp.*, 25 F. Supp. 2d 1038 (N.D. Cal. 1997) (brackets in original) (quoting *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547-58 n.7 (9th Cir. 1994)).  Conclusory allegations that a defendant's conduct was fraudulent is insufficient.  *In re Worlds of Wonder Securities Litigation*, 694 F. Supp. 1427, 1432 (N.D. Cal. 1988).

#### 2. Common law fraud

The elements of a claim for fraud under California law  are: (1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e. to induce reliance; (4) justifiable reliance; and (5) resulting damage.  *Lazar v. Superior Ct.*, 12 Cal.4th 631, 638 (1996).  Generally, fraud allegations may not be based solely on information and belief. *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 638-39 (N.D. Cal. 1980).  This general rule may be relaxed when facts are peculiarly within the knowledge of the other party. *Fong v. United States*, 300 F.2d 400, 409 (9th Cir. 1962) (holding that plaintiff's allegations were sufficiently pled because they stated facts primarily within the defendant's knowledge); *see also Russell v. Epic*

*Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999) (finding the 9(b) standard may be relaxed when facts "relating to the alleged fraud are peculiarly within the perpetrator's knowledge . . . ."). Even under a more relaxed standard, a plaintiff "must still set forth the factual basis for his belief," and mere speculation and conclusory allegations are insufficient to state a claim. *Russell*, 193 F.3d at 308.

This Court directed Facebook to plead facts identifying who at MaxBounty had knowledge of the alleged fraud, what those individuals knew, how MaxBounty contributed to the alleged fraud, and which of MaxBounty's affiliates were responsible for creating the Facebook pages at issue.  (Order at 7, 8)  The FAC alleges that Adam Harrison identifies himself as MaxBounty's Facebook Affiliate Manager and encourages and directs affiliates to make specific changes to their promotional Facebook Pages.  (FAC at ¶ 49)  These actions allegedly encourage affiliates to generate traffic for Max Bounty's advertisers through fraudulent and deceptive means.  (*Id.* at ¶ 50)  The FAC further alleges that MaxBounty affiliate Mitchell Fillmore created Facebook pages that offered a free IKEA gift card in conformity with the scheme described above, and that Fillmore was contacted by Harrison, who then provided technical assistance.  (*Id.* at ¶ 52)  When Fillmore raised concerns as to whether Facebook permitted his activities, Harrison allegedly reassured him and offered him $30,000 to continue creating similar pages.  (*Id.* at ¶ 53)  These allegations contain sufficient factual detail to make Facebook's claim plausible.

### 3. Aiding and abetting the alleged fraud

"A claim for aiding and abetting requires (1) the existence of an independent primary wrong, (2) actual knowledge by the alleged aider and abettor of the wrong and his or her role in furthering it, and (3) substantial assistance in the wrong."  *In re 3Com Securities Litigation*, 761 F. Supp. 1411, 1418 (N.D. Cal. 1990) (citing *Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir. 1982)).  "Substantial assistance requires that the defendant's actions be a 'substantial factor' in causing the plaintiff's injury."  *Impac Warehouse Lending Group v. Credit Sussie First Boston LLC*, 270 Fed. Appx. 570, 572 (9th Cir. 2008) (internal citation omitted).

6

Case No. 5:10-cv-04712-JF (HRL)
ORDER DENYING MOTION TO DISMISS
(JFEX1)

This Court directed Facebook to plead facts tending to show that MaxBounty had actual knowledge of the wrongful activity, describing MaxBounty's role in furthering the fraud, and explaining how MaxBounty provided substantial assistance in the wrongful activity. (Order at 8) The FAC alleges specifically that Harrison assured an affiliate that MaxBounty approved of the specific techniques the affiliate used. (Id. at ¶¶ 49-53) This is sufficient to satisfy Rule 9(b).

### 4. Conspiracy

To state a claim for conspiracy, Facebook must plead "an agreement to participate in an unlawful overt act that is performed in furtherance of an agreement. The existence of this agreement may be either express or inferred from a defendant's conduct. However, a conspiracy to commit fraud must satisfy the particularity requirement of Rule 9(b)." *In re 3Com Securities Litigation*, 761 F. Supp. 1411, 1418 (N.D. Cal. 1990).

The FAC alleges that MaxBounty's "Facebook Affiliate Manager" was aware of the deceptive campaigns that MaxBounty's affiliates promoted on Facebook and offered an advance payment to induce an affiliate to continue creating allegedly fraudulent pages. Again, this is sufficient for purposes of Rule 9(b).

### B. CAN-SPAM Act and Computer Fraud and Abuse Act

#### 1. CAN-SPAM and CFAA Claims

The CAN-SPAM Act makes it unlawful for any person to "initiate the transmission" of a "commercial electronic mail message" that is "materially false or materially misleading." 15 U.S.C. § 7704(a)(1). In this context, "initiate" means "to originate or transmit such message or to procure the origination or transmission of such message." 15 U.S.C. § 7702(9). To "procure" the initiation of an electronic mail message means "intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf." 15 U.S.C. § 7702(12). Using "materially" misleading header information in an electronic mail message includes "the alteration or concealment of header information" that would "impair ... the ability of a recipient of the message to respond to a person who initiated the electronic message." 15 U.S.C. § 7704(a)(6).

7

1    MaxBounty claims that Facebook has failed to show that MaxBounty is liable for

2    procurement or inducement of the messages at issue.  (Mot. To Dismiss at 2)  MaxBounty also

3    claims that Facebook fails to allege factual details necessary to its claim that the messages

4    contain materially misleading header information.  (*Id*. at 3)  The FAC alleges that Fillmore, a

5    MaxBounty affiliate, sent the messages at issue and duped Facebook users into sending

6    additional messages.  (FAC ¶¶ 50-53)  Facebook also alleges that none of the messages

7    associated with MaxBounty's campaigns identify MaxBounty as the initiator despite the fact that

8    MaxBounty initiated the messages by inducing Facebook users to execute malicious computer

9    code that causes messages to be sent automatically to all of their Facebook "friends."  (FAC ¶ 54)

10   These allegations are sufficient at the pleading stage.

11       **2. Computer Fraud and Abuse Act ("CFAA")**

12       The CFAA makes it unlawful for anyone knowingly and with intent to defraud to access a

13   protected computer without authorization or exceeding authorization and through such conduct

14   to further the intended fraud.  18 U.S.C. § 1030(a)(4).  Under the CFAA, "an employee accesses

15   a computer in excess of his or her authorization when that access violates the employer's access

16   restrictions, which may include restrictions on the employee's use of the computer or of the

17   information contained in that computer."  *U.S. v. Nosal* 2011 WL 1585600, 8 (9th Cir. Apr. 28,

18   2011).  *Nosal* also held that "an individual who is authorized to use a computer for certain

19   purposes but goes beyond those limitations is considered by the CFAA as someone who has

20   'exceed [ed] authorized access.'"  *Id.*

21       MaxBounty argues that because Facebook granted it access to the Facebook site, it could

22   not have exceeded its "authorized access" within the meaning of the CFAA.  (Mot. to Dismiss at

23   3-4)  However, Facebook alleges that MaxBounty and its affiliates registered for Facebook

24   accounts and accepted Facebook's terms of use, which places restrictions on their use of the

25   Facebook site.  (FAC ¶¶ 12, 31-40)  In this light, Facebook's allegations are sufficient to state a

26   claim under the CFAA.

27

28

8

## IV.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is DENIED.  MaxBounty shall file its answer within twenty (20) days of the date of this order.


DATED:  9/14/2011

_____
JEREMY FOGEL
United States District Judge

Case No. 5:10-cv-04712-JF (HRL)
ORDER DENYING MOTION TO DISMISS
(JFEX1)